# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **HARLEM ALGONQUIN LLC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Case No. 10 C 5783** |
| v. ) | |
| ) | **Magistrate Judge Morton Denlow** |
| **CANADIAN FUNDING** ) | |
| **CORPORATION,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on a motion for a preliminary injunction filed by Plaintiff Harlem Algonquin LLC ("Plaintiff") against Defendant Canadian Funding Corporation ("Defendant"). Plaintiff requests a preliminary injunction ordering Defendant to fund a loan financing Plaintiff's purchase of real property. For the reasons stated below, Plaintiff's motion is denied.

## I. BACKGROUND FACTS[1]

This suit involves a loan that was to fund Plaintiff's purchase of a single-tenant commercial property in Algonquin, Illinois. In or around March 2010, Jared Margolis ("Margolis") formed plans to purchase the property with a newly-formed limited liability company. He acted through two existing limited liability companies in which he is a member

---

[1] Because the Court did not hold an evidentiary hearing on this motion, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of Plaintiff.

and manager, MK Asset Management LLC and MK Asset Investment LLC (collectively, "MK Asset"). Through a broker, Margolis negotiated a loan commitment with Defendant. On June 3, Defendant sent the loan commitment to Margolis, and on July 15 it sent an amended loan commitment ("Amended Commitment"). The Amended Commitment names as the borrower a "Single Purpose Entity LLC Managed by MK Asset," and it names Margolis as a personal guarantor. According to the document, Defendant was to lend $3,168,800 to Plaintiff, secured by a first mortgage in the property, to be paid back at 7.99% interest over a five-year term.

Margolis executed the Amended Commitment on July 21 and then proceeded to formally organize Plaintiff Harlem Algonquin under Illinois law as a multiple-member, single-purpose limited liability company. Plaintiff ratified the acts of Margolis and MK Asset. In the meantime, Plaintiff also committed to purchase the commercial property in Algonquin. That deal was scheduled to close on September 25, 2010.

Problems arose when Defendant notified Plaintiff that it wanted personal guarantees and credit information from other of Plaintiff's members in addition to Margolis, as well as additional administrative fees to underwrite these "additional borrowers." Because Plaintiff does not believe that the additional requirements were part of the Amended Commitment, Plaintiff filed a two-count complaint in the Circuit Court of Cook County, Illinois. Count I requests specific performance of the loan contemplated in the Amended Commitment, while Count II alleges an anticipatory breach of the contract and requests damages.

Defendant removed the suit on diversity grounds and the case was referred to this

Court for the purpose of resolving Plaintiff's preliminary injunction motion, entitled "Plaintiff's Emergency Motion for Injunctive Relief." The parties have executed a limited consent to magistrate judge jurisdiction over this motion, pursuant to 28 U.S.C. § 636(c)(1). On September 23, the Court held oral argument and denied Plaintiff's motion from the bench, stating that this written opinion would follow.

## II. LEGAL STANDARDS

A preliminary injunction is an "extraordinary remedy," and "may only be awarded upon a clear showing that the party seeking it is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, --- U.S. ---, 129 S. Ct. 365, 375 (2008). The party moving for a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 374. The Seventh Circuit also considers whether an adequate remedy at law exists. *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006). If the moving party meets its threshold burden, the court then weighs the factors in a sliding-scale analysis. *Id.*

Mandatory preliminary injunctions, which require the defendant to take some affirmative action, represent an even more extraordinary remedy. They are "cautiously viewed and sparingly issued," such that only "the clearest equitable grounds" will justify the remedy. *Graham v. Medical Mut. of Ohio*, 30 F.3d 293, 295 (7th Cir. 1997) (citations omitted); *see also O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 1012–18 (10th Cir. 2004) (McConnell, J., concurring), *aff'd*, 546 U.S. 418 (2006)

(explaining the disfavored status of preliminary relief that disrupts the status quo).

## III. DISCUSSION

The issue presented in this case is whether preliminary injunctive relief is available to force the funding of a mortgage loan like the one contemplated in the Amended Commitment. The Court concludes that it is not. As discussed below, Plaintiff can establish neither a likelihood of success on the merits nor that the equities tip in its favor.

**A.  Because Illinois Law Does Not Permit Specific Performance, Plaintiff Cannot Establish a Likelihood of Success on the Merits.**

For a preliminary injunction to issue, Plaintiff must first establish a likelihood of success on the merits. *Winter*, 129 S. Ct. at 375. Here, that means establishing a likelihood that under Illinois law[2] Plaintiff could obtain specific performance of the Amended Commitment. To state a cause of action for specific performance in Illinois, the plaintiff must show 1) the existence of a valid, binding, and enforceable contract; 2) compliance by the plaintiff with the terms of the contract, or proof that the plaintiff is ready, willing, and able to perform the contract; and 3) the failure or refusal of the defendant to perform his part of the contract. *Hoxha v. LaSalle Nat'l Bank*, 847 N.E.2d 725, 729 (Ill. App. Ct. 2006).

---

[2] Because both parties have argued the issue under Illinois law, the Court likewise assumes that Illinois law applies to this diversity action.

Illinois courts, however, have never adopted an exception to the general rule against specific performance of lending agreements. In the one modern Illinois case that discusses the issue, the court first held that no enforceable contract existed and then discussed specific performance in dicta. *See McErlean v. Union Nat'l Bank of Chi.*, 414 N.E.2d 128, 133 (Ill. App. Ct. 1980). The *McErlean* court noted that in "the more persuasive cases" from jurisdictions permitting specific performance of lending agreements, courts required both a substantial change in position and an initial agreement contemplating the terms of the loan. *Id.* Without endorsing this exception to the rule against specific performance, the court simply noted that the plaintiff in that case could not establish the exception. *Id.* Apart from *McErlean*, a nineteenth-century Illinois case denied specific performance of a lending agreement because the plaintiff had failed to uphold his end of the bargain, but that opinion took no position on whether specific performance of lending contracts was possible. *See Cohn v. Mitchel*, 115 Ill. 124, 131–32 (1885).

The Illinois case law may be sparse, but it casts serious doubt on whether Illinois would grant specific performance of a loan commitment like the one here. As noted in *McErlean*, courts granting this sort of specific performance generally do so in construction loan cases, where cash flow is needed to finance an ongoing project. *See* 414 N.E.2d at 133 (citing Annot. 82 A.L.R.3d 1116, 1121–29 (1978)). In contrast to the typical construction loan case, the parties here have yet to enter into an ongoing relationship, so specific performance would force one upon them. If it would be an extension of Illinois law to grant specific performance of any lending agreement, granting specific performance of the

Amended Commitment here would be a leap. The Court declines to read such an extension into Illinois law. Thus, because Illinois law would likely not allow specific performance of the contract at issue, Plaintiff cannot show a likelihood of success on the merits.

Plaintiff cites numerous specific performance cases from outside Illinois, but they are all distinguishable, even aside from the fact that they deal with non-controlling law. For instance, Plaintiff cites a New York case that ordered specific performance of a purchase money mortgage, but in that case the lender was also the seller of the property and the lending agreement was part of the contract of sale. *See Bregman v. Meehan*, 479 N.Y.S.2d 422, 425–27 (N.Y. Sup. Ct. 1984). Plaintiff also cites a New Jersey case in which the court ordered specific performance of a mortgage loan to a construction company, but that loan concerned a construction project that was ninety-five percent complete, in which the plaintiff risked losing its equity. *See Selective Builders, Inc. v. Hudson City Sav. Bank*, 349 A.2d 564, 567, 569 (N.J. Super. Ct. Ch. Div. 1975). Moreover, both of these cases involved specific performance on the merits of a contract, not at the preliminary injunction stage.

Plaintiff has cited two cases in which courts used preliminary injunctions to prevent defendants from terminating a plaintiff's line of credit, but that is a different circumstance. For instance, a New York court recently granted a preliminary injunction requiring continued monthly funding of an ongoing construction project that was nearing completion. *Destiny USA Holdings, LLC v. Citigroup Global Mkts. Realty Corp.*, 69 A.D.3d 212, 216–23 (N.Y. App. Div. 2009). Likewise, a federal court in Massachusetts issued a preliminary injunction requiring Chrysler to keep a line of credit open to a franchisee. *B.P.G. Autoland Jeep-Eagle,*

*Inc. v. Chrysler Credit Corp.*, 785 F. Supp. 222, 227–30 (D. Mass. 1991). But pulling the plug on an ongoing business venture differs greatly from refusing to fund the venture in the first place.

Indeed, the Court is unaware of a single case anywhere in the United State in which a court has issued a preliminary injunction to force the closing of a loan commitment like the one at issue. Even assuming that specific performance were available after a trial on the merits, the special nature of preliminary relief suggests an alternate ground to deny the motion, as discussed below.

**B.     Because a Preliminary Injunction Would Amount to Final Relief, the Balance of Equities Does Not Favor Plaintiff**.

Plaintiff alleges that without this loan, its loss of goodwill and future profits will result in irreparable harm for which damages are impossible to estimate. But even assuming this is true, the Court must weigh potential harm to Plaintiff against the harm that a preliminary injunction would do to Defendant. *See Winter*, 129 S. Ct. at 376.

As the Seventh Circuit has noted, preliminary injunctive relief is not appropriate if it gives to a plaintiff "the actual advantage which would be obtained in a final decree." *W.A. Mack, Inc. v. General Motors Corp.*, 260 F.2d 886, 890 (7th Cir. 1958). This adage applies to the balance of equities, because granting a plaintiff final relief at the outset of the case would completely undercut the protections due a defendant. Not only would the plaintiff receive final relief without meeting his burden, but the defendant would often suffer a harm that cannot be undone. As has been noted of preliminary injunctions that disrupt the status

quo, "[i]t is one thing for a court to preserve its power to grant effectual relief by preventing parties from making unilateral and irremediable changes during the course of litigation, and quite another for a court to force the parties to make significant alterations in their practices" before a trial on the merits. *O Centro Espirita*, 389 F.3d at 1015. So much more so if the alteration would amount to irreversible final relief.

Here, ordering specific performance of the mortgage loan would result in an irreversible forced closing of the deal between Plaintiff and Defendant, rather than temporary or provisional relief. Plaintiff would sink Defendant's money into the commercial property, ringing a bell that could not be unrung. Plaintiff objects that a bond could remedy the situation, but nothing other than a bond for the full value of the loan would truly insure Defendant. Thus, because there is nothing preliminary about the relief requested, a preliminary injunction is not appropriate.

Of course, nothing in this opinion forecloses an action for money damages. If the parties ultimately fail to close their deal, Plaintiff may always sue Defendant for breach of contract.

## IV. CONCLUSION

For the reasons set forth in this opinion, Plaintiff's Emergency Motion for Injunctive Relief is denied.

**SO ORDERED THIS 1st DAY of OCTOBER, 2010**.

**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies sent to:**

| | |
|---|---|
| Tina M. Paries<br>Rab & Khan, LLP<br>560 West Washington Blvd,<br>Suite 400<br>Chicago, Illinois 60661 | Randall L. Oyler<br>Brandon C. Prosansky<br>Barack Ferrazzano<br>Kirschbaum & Nagelberg LLP<br>200 West Madison Street<br>Suite 3900<br>Chicago, Illinois 60606 |
| Counsel for Plaintiff | Counsel for Defendant |